Claudette FRIEZ, Plaintiff-Appellee,

v.

**NATIONAL OLD LINE INSURANCE COMPANY, Defendant-Appellant.**

No. 82–3255.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1983.

Decided April 11, 1983.

Wallace, Circuit Judge, dissented with an opinion.

James A. Poore, Butte, Mont., for defendant-appellant.

Thomas F. Joyce, Burgess, Joyce & Whelan, Butte, Mont., for plaintiff-appellee.

Before KILKENNY, WALLACE and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

Old Line Insurance Company appeals from the district court's judgment allowing recovery on a $12,000 life insurance policy. The policy application, completed on December 15, 1977, contained the following health question: "Do you know of any impairment, disease or disorder now existing in your health or physical condition?" The insured, Mr. Friez, answered "no." The application also contained a "good health" clause which provided: "I understand and agree that there shall be no insurance in force until the policy hereby applied for is issued and delivered to me during my lifetime and good health and the first premium is paid by me in which event the insurance shall be effective as of the Date of issue stated in the policy." The policy was issued on January 5, 1978.

When Mr. Friez died on February 21, 1978, Old Line refused to pay the death benefits specified in the policy; it returned the premiums paid by Friez and cancelled the policy. The company argues that the policy was void under Montana law on two grounds. First, Old Line argues that pursuant to the above "good health clause," the insured's good health at the time the policy was delivered was a condition precedent to coverage and that, because at the time the policy was issued the insured was suffering from an undiagnosed terminal cancer, the policy was void. Second, Old Line argues that Friez made a misrepresentation in his answer to the health question because, nine years prior to the time of application, he had been treated for ulcers. We uphold the district court's rejection, under Montana law, of both arguments.

Appellant's first argument fails because there was no fraud in connection with the "good health" clause. The insured did not know he had cancer when the policy was delivered. The relevant language of the insurance application here is similar in all material respects to the language construed in *Pelican v. Mutual Life Insurance Company*, 44 Mont. 277, 119 P. 778 (1911). The court in *Pelican* refused to void a policy issued to a terminally ill insured, stating that once "the premium had been paid and retained" by the insurance company, the insured was entitled to judgment "in the absence of evidence of fraud." 44 Mont. at 288, 119 P. at 781. The *Pelican* court further stressed that a warranty or condition precedent, as opposed to a representation, must be made a part of the contract by "express agreement of the parties on the face of the policy." *Id.*

Here, it is not apparent on the face of the policy that the parties intended the good health clause to be a condition precedent to coverage. The district court held, and the dissent disputes, that the provision is ambiguous. In the district court's view, the policy could be construed either to require good health at the time the policy is issued, or merely to establish that no insurance coverage is provided until the policy issued. Resolving such an ambiguity in favor of the insured, the district court concluded that the provision did not create a bar to coverage under the insurance policy. The district court based its decision on recent Montana decisions which continue to emphasize that, in the absence of clear, unequivocal language, insurance policies and applications must be construed in favor of the insured. *See James v. Prudential Insurance Company of America*, 131 Mont. 473, 312

P.2d 125 (1957); *Johnson v. Equitable Fire and Marine Insurance Company,* 142 Mont. 128, 381 P.2d 778 (1963).

■ As appellee stresses, there is a more apparent ambiguity in the "good health" clause which requires upholding recovery under the policy. Whether or not the clause is a condition precedent, the term "good health" may be construed to mean "objective good health," in which case the insured's knowledge of the existence of bad health at the time of application is immaterial, or it may be construed to mean "subjective good health," in which case the clause is satisfied if the insured has no knowledge or reason to believe that he is in bad health. *See* G. Couch, *Couch On Insurance* §§ 11:7–11:8 (R. Anderson 2d ed. 1959).

■ This ambiguity must also be construed in favor of the insured. No Montana court has ever held that an insured who is unaware of a serious illness is not in "good health" within the meaning of a provision like this one. In both *McDonald v. Northern Benefit Association,* 113 Mont. 595, 131 P.2d 479 (1942), and *Schroeder v. Metropolitan Life Insurance Company,* 103 Mont. 547, 63 P.2d 1016 (1937), the cases upon which appellant relies, the insured knew when the policy was issued that he suffered from the illness which eventually caused his death. These cases cannot stand for the proposition, suggested by the dissent, that knowledge of bad health is "irrelevant" under Montana law. *Cf. Pelican v. Mutual Life Insurance Company, supra* (objective evidence coupled with subjective belief of ill-health allows avoidance of policy). The import of Montana case law is that if the

validity of an insurance policy is to be conditioned upon the insured's objective good health, irrespective of what he knew or should have known, the condition must be clearly and conspicuously set forth. Since the "good health" clause was not so clearly expressed in this policy, we are required to hold that it cannot bar recovery.

■ Old Line's second argument is that the policy should have been voided because Mr. Friez's failure to reveal treatment for ulcers nine years earlier amounted to a material misrepresentation under Montana Revised Code § 33–15–403.[1] This argument also fails. Mr. Friez's misstatement did not affect the validity of the policy within the meaning of the Montana statute. The district court found that had the insured answered "yes," Old Line would have asked only for additional information. There is no showing that his statement was material to Old Line's acceptance of the risk or that the company would not have issued the policy had he responded otherwise. Further, the court found no intent to mislead on the part of the insured and no prejudice to the insurer, because the cause of death was not related to an ulcer. *See Pelican v. Mutual Life Insurance Co.,* 44 Mont. at 289, 119 P. at 781; *McDonald v. Northern Benefit Assoc., supra,* 113 Mont. at 606, 131 P.2d at 485 (to prove fraudulent misrepresentation which will prevent recovery, party must show intention to mislead). These findings are not clearly erroneous and the district court's conclusions were therefore proper.

Affirmed.

---

1. Montana Revised Code § 33–15–403 provides:

Representations in applications—recovery precluded if fraudulent or material. (1) All statements and descriptions in any application for an insurance policy of annuity contract or in negotiations therefor by or in behalf of the insured or annuitant shall be deemed to be representations and not warranties.

(2) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) fraudulent;

(b) material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

WALLACE, Circuit Judge, dissenting:

We review the district court's interpretation of state law based upon the clearly wrong standard. *Camacho v. Civil Service Commission,* 666 F.2d 1257, 1262 (9th Cir. 1982); *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.,* 641 F.2d 746, 752 (9th Cir.1981); *C.R. Fredrick, Inc. v. Borg-Warner Corp.,* 552 F.2d 852, 856 (9th Cir. 1977). I conclude that the district court's interpretation of the Montana case law clearly is in error. We are bound to follow decisions of the highest state court in resolving diversity cases. *Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Stoddard v. Stoddard,* 641 F.2d 812 (9th Cir.1981).

The district court held that the "good health" clause in the insurance policy was not a condition precedent, finding that it "merely establishe[d] that during the interim period between initial application and payment of the first premium the applicant was not provided coverage under the insurance contract." The district court found an "inherent ambiguity" in the good health provision and construed it against the insurer.

Two Montana Supreme Court decisions, however, dictate a finding that the good health clause is not ambiguous and that it is a condition precedent which must be strictly fulfilled. In *Schroeder v. Metropolitan Life Insurance Co.,* 103 Mont. 547, 63 P.2d 1016 (1937) (*Schroeder*), the Montana Supreme Court held an insurance policy void because the clause "the Insured is not alive or is not in sound health" was a condition precedent. The insured had not fulfilled the condition because she had a serious heart affliction on the date the policy was issued. In *McDonald v. Northern Benefit Association,* 113 Mont. 595, 131 P.2d 479 (1942) (*McDonald*), the Montana Supreme Court, relying on *Schroeder,* construed a provision that "there will be no liability on the part of the Ass'n. unless and until the certificate of membership is issued and delivered to me while I am ... in good health, free from disease" as a condition precedent to liability of the insurer. The insured was not in good

health on the date the insurance certificate issued. The language in the policy in the case before us is substantially identical to the language held to constitute a condition precedent by the Montana Supreme Court in *Schroeder* and *McDonald.* These decisions by the highest state court require us to hold that the good health clause in this case is not ambiguous. *See also Hildebrandt v. Washington National Insurance Co.,* 181 Mont. 231, 234, 593 P.2d 37, 39 (1979) (citing *Schroeder* and stating that "insurance contracts are still subject to the general rules of contract law, and our liberal construction should not abrogate or ignore critical provisions of a contract").

*Pelican v. Mutual Life Insurance Co.,* 44 Mont. 277, 119 P. 778 (1911) (*Pelican*), relied on by the majority, is distinguishable. *Pelican* focused on whether the insured made a fraudulent representation to the insurer. The inquiry was relevant because the policy stated that "[a]ll statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." 44 Mont. at 287, 119 P. at 780 (summary of action). In the absence of this policy language, fraud would not have been relevant to a determination whether the good health clause was a warranty or condition precedent. In the case before us, the policy contains a statement similar to that quoted above from *Pelican.* The district court, however, correctly separated its discussion of this language from its discussion of whether the good health clause was a condition precedent.

I would reverse the judgment of the district court and hold that the "good health" clause was a condition precedent. I would remand for consideration of whether the condition precedent was met.