No. 12692

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

UNIVERSAL UNDERWRITERS INSURANCE
COMPANY, a corporation,

        Plaintiff and Respondent,

-vs-

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, a corporation; HERBERT SOLLE,
individually and as Administrator of the
Estates of DAVID SOLLE and GREGORY SOLLE,
Deceased, et al.,

        Defendants and Appellants.

---

Appeal from:  District Court of the Fourth Judicial District,
           Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellants:

        Garlington, Lohn and Robinson, Missoula, Montana
        Sherman V. Lohn argued, Missoula, Montana
        Worden, Thane, Haines and Williams, Missoula,
         Montana
        Shelton C. Williams argued and Ronald A. Bender
         argued, Missoula, Montana
        Longan, Holmstrom and Cebull, Billings, Montana

    For Respondent:

        Anderson, Symmes, Forbes, Peete & Brown, Billings,
         Montana
        Rockwood Brown, Jr. argued, Billings, Montana

---

                Submitted:  September 11, 1974

                    Decided: FEB -5 1975

Filed: FEB -5 1975

*Thomas J. Kearney*
                   Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff Universal Underwriters Insurance Company filed its complaint June 12, 1973, in the district court, Missoula County, seeking declaratory relief. All of the defendants appeared and filed answers. It was agreed between the parties that the matter would be submitted upon an agreed statement of facts.

The court on November 13, 1973, entered its findings of fact, conclusions of law and judgment declaring that defendants John D'Orazi, Sr., Darlyene D'Orazi and John Zachary D'Orazi, Jr., were not persons insured under the garage liability insurance policy issued by Universal Underwiters Insurance Company to Cislo Chevrolet-Olds, Inc., and that plaintiff was not liable for any acts or omissions of the D'Orazis pertaining to an accident which occurred on October 19, 1971, nor any damages or claims arising therefrom. It further declared that plaintiff was not liable to defend D'Orazis, or any thereof, against the civil action brought by Herbert Solle against the D'Orazis pertaining to the deaths of David and Gregory Solle, nor pay the costs of defense thereof.

Defendant Solle filed exceptions to the findings of fact, conclusions of law and the judgment and was joined in such filing by defendant State Farm Mutual Automobile Insurance Co. The court overruled Solle's and State Farm's exceptions. Thereafter all defendants appealed.

The agreed facts are: On or about April 1970, one Jane Howard purchased an automobile from Courtesy Chevrolet-Olds, Inc. of Polson, Montana, and traded in a 1962 Mercury Monterey autombile, identification number 2Z67Z518891.. She delivered the title certificate for the 1962 Mercury, notarized and endorsed in blank, to Courtesy. Around June 1970, Courtesy sold the Mercury to one Don Tidwell and delivered the title certificate to Tidwell, without executing the assignment, notarizing it, or forwarding the certificate of ownership, certificate of registration, and an application for registration to the state registrar of motor vehicles as required by section 53-109, R.C.M. 1947.

In August 1970, Tidwell traded the 1962 Mercury to John D'Orazi, Sr., giving D'Orazi a bill of sale. On October 19, 1971, John D'Orazi, Jr., was driving the Mercury automobile in the city of Missoula when it collided with a motorcycle ridden by David Solle and his brother, Gregory Solle. As a result of the accident both David and Gregory Solle died.

Herbert Solle, individually and as administrator of the estates of David and Gregory Solle, filed in the district court, Missoula County, a combined wrongful death survival action. He named John Zachary D'Orazi, Jr., as a defendant based upon his negligent driving of the Mercury automobile and also named John D'Orazi, Sr., and Darlyene D'Orazi, the parents of John, Jr., on the basis of negligent entrustment as defendants. He claimed general, special, and punitive damages.

At the time of the fatal accident defendant State Farm Mutual Automobile Insurance Company insured Herbert Solle under three automobile liability policies. Included in the coverage under each policy is uninsured motorist coverage. State Farm has agreed to pay Solle the sum of $40,000, allocating $30,000 to Gregory and $10,000 to David, in compromise of Solle's death claims under the uninsured motorist coverage provisions of the three policies which Solle carried with State Farm. The agreement also provides that Solle may pursue death claims against the D'Orazis, and in the event of judgment and recovery under the Universal Underwriters garage liability policy, State Farm would be entitled to subrogation against any recovery up to the amount of its $40,000 payment.

At the time of the accident there was in full force and effect a garage liability policy issued by Universal Underwriters to Cislo Chevrolet-Olds, Inc. (Courtesy's successor). On or about March 2, 1973, Universal Underwriters received notice from defendants D'Orazi tendering defense of the Solle case and claiming coverage under Universal's garage liability policy on the grounds the 1962 Mercury automobile was still owned by Universal Underwriters' insured, by

reason of its failure to process the transfer of title when the Mercury was sold to Don Tidwell in 1970. Universal Underwriters has denied coverage to D'Orazis but has assumed the defense of the underlying wrongful death and survival action upon an express reservation of rights and nonwaiver of its defenses under the policy. Paragraph V of the garage liability insurance policy containing the definition of "Persons Insured" provides:

"Each of the following is an insured under this insurance to the extent set forth below:

"* * *

"(3) with respect to the automobile hazard:

"(a) any partner, or paid employee, or director or stockholder thereof or a member of the household of the named insured or such partner or paid employee or director or stockholder while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and

"(b) any other person or organization legally responsible for the use thereof only while such automobile is physically operated by the named insured or any such partner or paid employee or director or stockholder, or member of the household of the named insured or partner or paid employee or director or stockholder, provided the actual use of the automobile is by the named insured or with his permission."

Appellants present these issues for this Court's review:

1. Whether there is coverage for the defendants D'Orazi under the Universal Underwriters garage liability policy under the Safeco Insurance Co. v. Northwestern Mutual Insurance Co., Ostermiller v. Parker, and Irion v. Glenn Falls Insurance Co., cases?

2. Whether the person insured provision of the Universal Underwriters' policy is ambiguous and should be construed against the insurer?

3. Whether under the Owner's Responsibility Law (section 53-438, R.C.M. 1947), the Universal Underwriters' garage policy must contain a mandatory omnibus clause?

4. Whether the limitation and/or exclusion of a permissive user from the definition of insured, as respondent contends, is a limitation or exclusion in an insurance contract which is unenforceable as being violative of public policy?

- 4 -

Appellants in their first issue contend this Court's decisions in Safeco Ins. Co. v. Northwestern Mutual Ins. Co., 142 Mont. 155, 382 P.2d 174; Ostermiller v. Parker, 152 Mont. 337, 451 P.2d 515; and Irion v. Glenn Falls Ins. Co., 154 Mont. 156, 461 P.2d 199, established the rule that if a car dealer fails to comply with section 53-109(c), R.C.M. 1947, by failing to send to the registrar of motor vehicles a certificate of ownership, certificate of registration, plus an application for registration upon the sale of a car, and that car is involved in an accident, the automobile dealer's liability insurance policy covers the person driving the car, regardless of the language or limitations regarding coverage contained in the insurance policy.

This seems to go to the question of liability of the garage owner which is not at issue here. Here, the sole question to be determined is whether or not the "garage" liability policy issued by Universal to Cislo Chevrolet-Olds, Inc. (formerly Courtesy) also insures the D'Orazis; which is a question of coverage.

The confusion arises because the three cases cited by appellants all had "omnibus" clauses and coverage was not in issue but rather ownership was the central question to be determined. The three cases held, as a matter of law, that if the car dealer failed to comply with section 53-109(c), R.C.M. 1947, then the title to that automobile remains with the car dealer, as in the case here. However, as in all cases of this nature, once ownership is established the language of the insurance contract in force governs the coverage available to a person claiming coverage, if any. The statute under consideration is not penal.

Appellants' issue No. 3 is not well taken inasmuch as public policy and this Court's interpretation of section 53-438, R.C.M. 1947, are laid to rest in Northern Assurance Co. v. Truck Insurance Exchange, 151 Mont. 132, 439 P.2d 760, and in Boldt v. State Farm Mutual Auto. Ins. Co., 151 Mont. 337, 443 P.2d 33. Interestingly, counsel here for appellants Solle and State Farm were involved in

Northern Assurance. There has been no showing in the instant case that the policy in question was issued to show proof of financial responsibility as required by sections 53-418 through 53-458, R.C.M. 1947.

Appellants' issues 2 and 4 will be discussed hereinafter in the context of the limitations on those insured under Paragraph V, heretofore cited, of the garage liability policy. The exclusions are not at issue here.

The policy under consideration here does not contain an "omnibus" clause but a limitation of those insured and hence is not a standard liability policy. Appellants contend this is violative of public policy. Section 13-801, R.C.M. 1947, on unlawful contracts provides:

"That is not lawful which is:

"(1) Contrary to an express provision of law;

"(2) Contrary to the policy of express law, though not expressly prohibited; or,

"(3) Otherwise contrary to good morals."

Many out of jurisdiction cases have examined exclusions and limitations of coverage cases similar to the instant one and have not been moved to declare the absence of "omnibus" coverage against public policy. This Court in Northern Assurance found exclusions not violative of public policy if not in violation of statute, and the same would apply to limitations. We have disposed of the statutory argument concerning section 53-438, R.C.M. 1947, and will only comment that the claimed application of section 40-4403, R.C.M. 1947, concerning "omnibus" coverage to be contained in "uninsured motorist policies" has no application to the problem here presented to this Court in the agreed statement of facts.

Two parties may contract in any manner they so choose with any insurance coverage they desire, as long as that contract is not contrary to an express provision of law; contrary to the policy of express law, though not expressly prohibited; or, otherwise contrary to good morals.

Appellants' issue 2 argues the "persons insured" provision contained in Paragraph V of the policy in question is ambiguous and should be construed against the insurer.

The policy of insurance between Universal and Cislo Chevrolet is a contract, and subject to applicable contract law of Montana. The language of a contract governs its interpretation, if the language is clear and explicit. Section 13-704, R.C.M. 1947. The intention of the contracting parties is to be ascertained from the contract itself, if possible. Section 13-705, R.C.M. 1947. Where the language of an insurance policy admits of only one meaning there is no basis for interpretation of the policy coverage under the guise of ambiguity. Nelson v. Combined Insurance Co. of America, 155 Mont. 105, 467 P.2d 707. In Kansas City Fire and Marine Insurance Company v. Clark, 217 F. Supp. 231, 235, (D.C.Mont. 1963), Judge Jameson noted the general rule that ambiguous or uncertain provisions of an insurance policy shall be construed in favor of the insured and against the insurer, but he cautioned:

> "On the other hand, if the intention of the parties is clear, the courts have no authority to change the contract in any particular, or to disregard the express language the parties have used. In James v. Prudential Ins. Co., 1957, 131 Mont. 473, 477, 312 P.2d 125, 127, the court said: 'But even though it is a cardinal principle of insurance law that a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer, contracts of insurance should be given a fair and reasonable construction. Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 111, 261 P. 880. In arriving at such construction, no matter how strictly construed against the insurer, the intention of both insurer and insured is to be ascertained from the language of the policy. R.C.M. 1947, § 13-704. Effect must be given to every part of the policy contract. R.C.M. 1947, §13-707. The words of the contract are to be understood in their usual meaning. R.C.M. 1947, § 13-710. Common sense controls.' Moreover, '[a]mbiguity does not exist just because a claimant says so. It can only exist where the wording or phraseology of a contract is reasonably subject to two different interpretations.' Holmstrom v. Mutual Benefit Health & Accident Ass'n, 1961, 139 Mont. 426, 364 P.2d 1065, 1066."

To the same effect the Ninth Circuit Court of Appeals in National Farmers Union Property and Casualty Company v. Colbrese, 368 F.2d 405, 411, commented that the foregoing rule:

"* * * does not prevent application of the more general principle that an insurance policy, like any other contract, must be given an interpretation which is reasonable and which is consonant with the manifest object and intent of the parties."

Paragraph V, section (3)(a), of the policy provides that in addition to the named insured, Cislo Chevrolet-Olds Inc., any partner, paid employee, director or stockholder of the named insured, or any member of the household of any of the foregoing are covered under the insurance policy in question. This section is clear and unambiguous and clearly does not include the D'Orazis under the facts.

Section (3)(b) of Paragraph V of the policy provides that in addition to the named insured, any other person or organization legally responsible for the use of an owned automobile will be an additional insured under the policy provided that such automobile is physically operated by the named insured or any such partner or paid employee or director or stockholder or member of the household of the insured, partner, paid employee, director or stockholder.

Since the 1962 Mercury was not physically operated at the time of the accident by the named insured or any partner, paid employee, director or stockholder, or member of the household of any of the foregoing specified category of persons, the D'Orazis do not come within the definition of an insured under Section (3)(b).

Appellants present case law and a strong argument that the term "physically operate" is unclear and susceptible of various con- structions and more so when the named insured is a corporation. They rely on an Idaho case, Mayflower Ins. Exchange v. Kosteriva, 84 Ida. 25, 367 P.2d 572, 574 (1961) for principal support. However, the language there was "operate" in an exclusion of military personel. The contention there was "actual physical control" or "the right of direction and control", and the court found the term "operate" as used ambiguous and uncertain.

Here, our term is "physically operated" and therefore not in point with the Idaho court's analysis. A better analysis of our problem, concerning the same policy provision, at a time when it

- 8 -

contained only the term "operate", by the Ninth Circuit Court is found in Orth v. Universal Underwriters Insurance Co., 284 F.2d 857, 860.

Orth involved a corporate insured and the same argument was advanced to the Ninth Circuit Court as here and in this regard the Court concluded:

> "Having reached this conclusion through an analysis of the contract language and finding no ambiguity, the determination that Aronson is not insured under the policy is one of law and not of fact. Since 'operated' as used in clause (3) does not include the concept of direction and control, no issue of fact is presented as to whether West Seattle Motors directed and controlled Aronson in the use of the automobile. Having thus determined that Arnson's operation of the automobile is excluded in any event from coverage under the policy, it is immaterial whether his use of the car was permissive, as required by the proviso at the end of clause (3)." (Emphasis added).

The trial court correctly held as a matter of law that the D'Orazis were not parties insured under the garage liability insurance policy issued by respondent Universal Underwriters Insurance Company to Cislo Chevrolet-Olds, Inc. and in question here.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 9 -